v. Scott v. Wilkie. Ms. Holt. Thank you, your honors. May it please the court. Legal errors in this case by the board and by the Veterans Court wrongly capped Mr. Scott's disability rating at 50% rather than the 60 or 70% that he may have been entitled to. VA regulations and the law of the Veterans Court requires that when, as here, a veteran suffers from both listed and unlisted diagnoses of the foot, ratings under 5284 for foot injuries other must be considered. In this case, the error began when the board discarded that code as not applicable in the present case, and it was continued when the Veterans Court failed to correct that legal error and remand for a proper determination under the proper legal framework. What is the, putting aside your argument that for Chenery-like reasons, the Veterans Court erred in making a couple of fact findings itself to supply a missing rationale, putting that completely to one side, what's the legal error that the Veterans Court committed in not correcting what you say is a legal error of the board? The legal error was the failure of that Veterans Court to follow its own prior precedent, as in Yancey, and its failure to follow a rule of law. This court has held in cases like Garden v. Shinseki and Harris v. Shinseki that the failure of the Veterans Court to follow a rule of law itself presents a legal question, and in fact, if the Veterans Court fails to follow its own precedent, that constitutes a legal error that will require a remand. So this case is on all fours with cases previously in which this court has evaluated the question of whether a Veterans Court is properly following its own law. That's a legal question that's squarely presented and within this court's jurisdiction. And that principle of law that you think the Veterans Court failed to follow is the principle that you derive from Yancey and then the following follow-on cases of Yancey to the effect that when there is a different condition not previously considered, one way or the other, the board has to consider it, either to say same symptomatology and therefore doesn't add anything or something else. That's the rule, yes, that's the rule of law that the Veterans Court failed to follow in this case. It's not just the rule that's announced in Yancey, it's of course pursuant just generally to VA regulations that the agency has an obligation to consider all potentially applicable regulations and then provide the highest possible rating that more nearly approximates the veteran's disability picture. So in this case, when there is not a rating, a diagnostic code that specifically aligns with the service-connected disability, it is the obligation of the board to consider what other diagnostic codes are more applicable to that veteran's disability and Yancey applied that rule in the context of the ratings of disabilities to the foot. So Yancey is an application in the specific context of foot disabilities that the board does have an obligation to consider whether ratings under 5284 are appropriate. And with respect to that legal rule, Judge Toronto, I don't think there's a dispute here. And you ground that in 4.7? 4.7. And in general, the regulations that provide that the secretaries has enumerated this diagnostic code schedule is to use that schedule to guide their determinations with respect to disability compensation. And I don't think there's a dispute here. The secretary doesn't dispute that that is the rule that governs this case. That when a veteran has undiagnosed conditions, ratings under 5284 must be considered. But that's precisely what the board failed to do in this case and that's where the legal error arose. In the board's decision in this case at appendix 26 is the only place where the board addressed 5284. And there the board was clear in its statement. It had the mistaken belief based on a misunderstanding of Copeland that simply because one of Mr. Scott's disabilities is listed in the diagnostic code, ratings under 5284 were not available. That was an error of law. Copeland does not address the scenario like here where a veteran presents with both listed and unlisted disabilities. And it was that legal error that led the board down the wrong path and artificially kept the board at the ratings that are available in 5276. I don't think there's a dispute from the secretary that had 5284 been considered, Mr. Scott in this case may have received a higher compensation of 60 or 70 percent. And so by artificially tying his hands at 5276, the board essentially cut its analysis short and didn't give Mr. Scott the consideration that he was due under all potentially applicable ratings. I think, I'm not sure if I remember this right, but I think the government argues, but in any case, I'd like you to suppose I were to argue or posit that what the Veterans Court did here was in fact to interpret the crucial paragraph in the board's opinion, the carryover from 26 to 27 as really, even though it didn't refer to the plantar fibrosis as it is, fibromas, as covering that. And would that interpretation of the board decision be a matter that we couldn't review? And if that interpretation were therefore to be accepted, then is there a legal error? So I think the interpretation by the Veterans Courts of the board's decision, that would be within this court's jurisdiction to review as a legal matter if that, because it falls within the basic dictates of administrative law, that a court on review cannot sort of look behind and make up a rationale for an agency decision that doesn't exist. So in that sense... Well, let me just try to be very specific. So at the top of 27, Appendix 27, the paragraph that carried over from 26 to 27 ends with a sentence, in any case, all of his symptomatology is being compensated for in the increased evaluation provided under 5276. It is, you suggest, with I think a lot of plausibility, that that actually refers only to the flat feet of Pest Planus. But maybe it doesn't. And if it doesn't, then the Veterans Court maybe could interpret that to include the other disabilities that, or injuries that were, that the board itself referred to earlier, including the plantar fibromas. Why is that a beyond the bounds, or even for us, reviewable interpretation of the board decision? I think there's two points to that. Firstly, the fundamental problem with this paragraph is not whether it's concerning symptomatology owing to the fibromas or to the flat foot. The fundamental problem with this sentence is that even if this sentence considers the fibromas, it's still not discharging the board's legal obligation, which is that considering the symptomatology alone and compensating for it is not enough. The agency has an obligation to consider that symptomatology under all potentially applicable codes. And in here, in this case, by cutting 5284 out of the analysis, the symptomatology was only aligned with codes that went as high as 50%. The board has an obligation to look at that symptomatology and compare it to codes that may be applicable and go higher, in this case 5284, 60% or 70%. With respect to Your Honor's question regarding the legal question of interpretation of the sentence, again, I think I would refer back to the basic principle that it's true that this court cannot review the factual findings of the board or the application of a lot of fact, but this court certainly can always review the question of whether there's been a Chenery violation. And that's the fundamental problem here, is that the Veterans Court, in reviewing this board decision, read so much into this board decision that is inappropriate. You cannot discern it from this board's decision, and that's the problem that the Veterans Court committed in this case, and that is a legal question, Your Honor, that's within this court's jurisdiction. Now, as to those rationales that the Veterans Court employed, I think it's clear that those are based on fact findings that aren't present in the Veterans Court decision, and I can take them in turn. The first rationale by the Veterans Court was that the board's analysis here was permissible under the rule against pyramiding, but that is patently not present in the board's decision. There is nothing in the board's decision that discusses the rule against pyramiding, that cites to Section 4.14, that undertakes an analysis of whether the disabilities here are the same or different, whether there's a single or multiple disabilities, or whether the symptomatology from the various diagnoses overlap. There's simply nothing in the board's decision to support that kind of conclusion that the Veterans Court drew, and the Veterans Court has been clear in prior cases, for example, in Fanning v. Brown, that if the board is going to rely on a rationale of pyramiding, it must do so explicitly with citation to applicable regulations. That would be Section 4.14, and that is nowhere to be found in the board's decision. Does the terminology of symptomatology pretty much automatically equate to the terminology of manifestations in 4.14? So 4.14 uses manifestations and disabilities, and this court has referred to symptomatologies in Amberman. I think there's some overlapping between those different labels that have been used. I think the crux of the analysis all goes back to the definition of a disability, which is the degree of functional impairment, as this court recently held in Saunders v. Wilkie. That's what we're really looking at here is the degree of functional impairment. And in this case, the board considered the symptoms, did not assign them to either or attribute them to either or one or the other of the disabilities, and instead just lumped them all in properly under 5276 without considering whether some or any of them were better rated under 5284. Whether that's a symptom or a manifestation, that's the analysis that it failed to do. With respect to the second rationale by the Veterans Court, which is that the board appropriately selected 5276 over 5284, again, that is a finding that is not supported by board findings. In fact, to the contrary, the board was explicit and expressed in its statement that it was not considering 5284. In that case, it undertook no analysis of whether the criteria of 5284, severe, moderately severe, or moderate, for example, was a better fit for Mr. Scott's entire disability picture than the criteria of 5276. There could not have been a selection in this case, Your Honor, because the board looked only to one code. The Veterans Court's finding that the board somehow made a selection between 5276 and 5284 cannot be squared with the board's expressed statement at Appendix 26 that it was not considering 5284 in the present case. To address briefly the Secretary's arguments regarding various of the statements in the board's decision, we've explained in our reply brief why the Secretary's brief at pages 18 and 19 are not sufficient to discharge the board's obligation. For example, the veteran points to statements at Appendix 26 where the board states that 5276 provides a better approximation for the veteran's disability picture. Again, these statements are made in the context of having already rejected DC 5284. So to state that the 50% rating of 5276 provides a better approximation as opposed to the 30% rating of 5276 does not speak at all to whether the ratings of 5284 might in fact be the best approximation for his disability pictures. So those statements, Your Honor, just don't address the question. What do you mean by the best reflex sentence coming in the context of already having rejected 5284? So on Appendix 26, thank you, Your Honor, that paragraph is above the paragraph where the board rejects 5284. But in that paragraph on Appendix 26, the middle paragraph on that page, what the board is discussing in this case is a 50% rating under 5276. And the criteria that are being discussed in that paragraph are the criteria that are listed under Code 5276. There's no statement or acknowledgement or recognition of the criteria of 5284 in this case. And I think we have to read that paragraph together with a paragraph that comes below where the board states 50% rating is the maximum rating assignable. I think that's a plain statement by the board that it had only been looking at Code 5276 and hadn't considered Code 5284. I am into my rebuttal time. I'm happy to answer any further questions. Thank you. Ms. Moses. Good morning, Your Honor. May it please the court. Excuse me. I do agree that the key page here for the court's review is Appendix Page 27, which the board made a fact, I'm sorry? A little bit on 26. And a little bit on 26 and some of the preceding pages as well. But key here is the board's factual finding that all of Mr. Scott's symptomatology is being compensated for in the increased evaluation provided under Diagnostic Code 5276. And what the veterans, what VA is required to do under the regulatory scheme under Part 4 of 38 CFR is to look at the symptoms that are being presented by however many... I guess my difficulty with that is that by the time I get to that in any case sentence, that paragraph sure seems to be only about flat feet. It's important to note, Your Honor, that the fibromas have been part of Mr. Scott's disability picture dating all the way back to his military service. And even when he requested an increased rating from 30% to 50%, the fibromas had been considered long ago. This is not a new symptom that arose. And most importantly, there are no symptoms that are distinct from the symptoms that he experiences as it relates to the pest plant. Where did the board find that? Sure, Your Honor, I can... There is... And I gather Ms. Holt has a, I think as I understand it, a two-part argument. One, the board didn't find that. And second, even if it were to have found that, the legal requirement is that the board consider the higher of two possible... Diagnostic... 5276 or 5284. And it didn't do that either. Right. Maybe I've misunderstood. Well, just to first answer Your Honor's question about where it is in the record that fibromas have been part of the medical history since service, if I'm understanding Your Honor's question. No, no, no, no, no. Where did the board find that there are no incremental symptoms from the fibromas over and above the symptoms from the other foot conditions, most importantly the flat feet? I understand Your Honor's question. There is no explicit finding that the fibromas have symptoms that are distinct and separate from the pest planus. What can be reasonably gleaned from reading appendix pages 22 to 27 is that the symptomatology is indistinguishable. He experiences pain, which is specifically provided for in Diagnostic Code 5276. Tender plantar surfaces explicitly provided for in Diagnostic Code 5276. That the use of orthotics does not improve his condition, explicitly provided for in Diagnostic Code 5276. And he has a listed service-connected disability, pest planus, which is what 5276 is for. If you look at Diagnostic Code 5284, which is included at 38 CFR 4.71a, there's no criteria there. All it does is list the severity of another foot injury. But this is different from pest planus. So when the board or the Veterans Court says that 50% is the maximum from the schedule, the maximum scheduler disability, and we have this additional disability, which apparently arose later, why shouldn't it be considered separately? Your Honor, that's why I made the point earlier that the fibromas did not arise sometime later. It's always been part of his service-connected disability under pest planus. From the beginning, the fibroma was analyzed and detected with the initial pest planus claim? Yes. I didn't see that argument presented. I thought it was a later manifestation, which was traced back to service. So there's no question of service connection. Right, no question of service connection. But this history of fibromas have been present for many, many years. It's just not something that was raised on appeal to the board. In fact, when Mr. Scott filed his appeal with the board, he specifically, it's at page Appendix 36. His request to the board was that his pest planus with Howitz-Valgus deformity deserved an increased rating greater than 30%. And then on appendix pages 38 to 39, again, he references only the pest planus, because that's a service-connected disability for which he has been granted 30% at the time. And he mentions only diagnostic code 5276. There's no mention that I have this new symptom or I have symptoms that can be disassociated from the pest planus. The pest planus involves the arch of the foot, a flattening of the arch of the foot. The fibromas are in that exact same anatomical location, the arch of the foot. The symptoms that are being manifested by those disabilities are the pain, the tender plantar surfaces, and also that the use of orthotics do not assist or help with those conditions. These conditions are specifically provided for in diagnostic code 5276. And while there are instances in which if a veteran, for example, has some sort of unlisted condition, under 4.20 and 38 CFR, the VA may look to some sort of analogous rating. There was no need to here, because every single symptom he has... Aren't they listed separately in the schedule? Not that any problem with your feet here at 50% maximum, but there's the pest planus with a 50% maximum. And you could have, without having pest planus, could have a fibroma, a painful result, also surface-connected. That seems to be what the record shows. That these disabilities, I'll call them, are different. As a result, your feet hurt. But nonetheless, that the 50% is ascribed to pest planus. Is it not to any combined contribution? The 5276 accounts for the entire disability picture. That's the factual finding that the board made. It does not relate specifically or only to the pest planus. What Amberman requires is for the VA to look at the entire disability picture, to look at all of the symptomatology and try to match the symptoms that the veteran is presenting with the diagnostic code that best corresponds or correlates with the symptomatology. I mean, Ms. Holt agrees with that, namely that as a statement of what the board was required to do. I think she disputes that it did it. The factual findings, your honor, that's exactly what the board did. It said all, not some, not just for pest planus. All of his symptomatology is being compensated for in the increased evaluation. Not only that, but at appendix page 26, the board finds that the predominant symptoms appear to be pain that increases with the use and mark pronation of both feet. The record also clearly shows that his condition is only minimally improved with the use of orthotics. And it also says, and this is in the second paragraph, excuse me, if you skip down a couple of lines, a disability picture comparable to that of extreme tenderness of plantar surfaces. And finally, given the chronic progressive nature and symptomatology of the disability at issue, the board finds that a 50% rating under 5276 best reflects the disability picture shown. And all of the paragraphs that precede that, they mention fibromas. They discuss his lengthy medical history. It's a very comprehensive discussion here about all of his symptoms, not just the symptoms that relate to the pest planus, but all of the symptoms that relate to that anatomical location of the foot, which is for Mr. Scott, would be the arches of his feet. So it was entirely reasonable for the board to rate Mr. Scott under 5276 and certainly not resort to 5284, which doesn't list any of the symptoms that he presents for a disability rating here. I'm not sure whether you've already discussed this, but I think earlier I at least summarized what was in my mind about the two points Ms. Holt was making, one that the board really didn't adequately address one of the conditions, even to determine satisfactorily whether the symptomatology was the same. But I take it she has a second point that even if one assumes that there is overlapping symptomatology, that the board didn't adequately consider which of the possible diagnostic codes provided the maximum or which one was appropriate under the regulations telling the board how to proceed. Well, the board did in fact address that head on by concluding that all of the symptoms, again, not just the ones related to pest planus, not even just ones related to fibromas, are all contemplated explicitly under diagnostic code 5276. And to look to 5284 in fact would have been unreasonable because what Copeland does say at 336 is that if a condition is listed in the schedule, then the VA must use that rating. And otherwise, it would essentially result in an impermissible rating by analogy. Everything that Mr. Scott, all of his symptoms that are presented are explicitly contemplated for in diagnostic code 5276. And that is what the board is saying. Maybe you can clarify this for me. And Copeland, so it's one thing to say that a condition that is specifically in 5276 shall not be considered under 5284. That's Copeland. Suppose you say there is a condition that's not in 5276. The symptomatology is the same as the one that's in 5276. At that point, does the board have to consider whether 5276 necessarily applies or maybe 5284 applies because we're no longer in the realm of all the conditions we have identified are squarely covered by a non-5284 code provision. Well, what Amberman, what this court said in Amberman is that it's the overall disability picture that's relevant, not the name of the disorder. So, yes, while fibromas is not listed in the diagnostic, in the ratings, what the VA did, which it should do, as it is instructed by Part 4 of 38 CFR, is to look at the symptomatology. And when you have a one-for-one match for every single symptom that the veteran possesses, that's the appropriate route to take. And that is what we believe Copeland requires. And it makes sense. Like, why look elsewhere when you have a rating that one-for-one matches each and every symptom? And looking at the overall disability picture, it encompasses everything that the veteran has presented in terms of symptomatology. And, again, fibromas have been part of the disability picture from the beginning. It's not anything new. And when he requested an increased rating, what he has not done, and what is important, is that he has not set apart any symptoms that should be rated under 5284, or really given the board any reason, and the medical evidence doesn't show any reason why, it should resort or would look to a different diagnostic code that doesn't contemplate the symptomatology presented. And with respect to Mr. Scott's argument that there has been a shunnery violation, what the Veterans Court did here with respect to addressing the 4.14 pyramid rule is to really respond to Mr. Scott's argument that he's entitled to this additional separate rating, and to explain. This is why you're ultimately, by law, that you wouldn't be entitled to this, because 4.14 says that if you have overlapping or duplicative symptomatology, the VA cannot give you a rating under both diagnostic codes. That is not permitted. So it is not a substitution for the board's rationale or findings. It's just to respond to his argument that somehow he could get possibly a rating under both diagnostic codes. I see that my time is up, if the court doesn't have any more questions. I think we're okay. Thank you, Ms. Moses. Thank you. Ms. Holt. Just a few quick points, Your Honors. First, with respect to Judge Taranto's question about where is the finding as to whether the symptoms in this case are owing to one or the other of the two conditions, there is none. That is the problem. There is no finding by the board as to whether the symptoms are owing to his fibromas or his pes planus, or whether they overlap. That's the problem, and that's why the Veterans Court's pyramiding rationale is not correct. With respect to the counsel for the Secretary's argument that there's a one-for-one correlation of the symptoms in this case and 5276, respectfully, Your Honors, that's not correct. The board observed multiple different symptoms that Mr. Scott is experiencing throughout pages 23 through 27 of the brief, including numbing, tingling, constant throbbing pain. None of those are listed in the criteria of 5276, so respectfully, I do not think there is a one-to-one match with respect to the medical evidence in 5276 here. With respect to the statement about whether all symptoms are enough at the top of appendix page 27, again, there are two reasons that statement is inadequate, which is that it's not clear. The agency hasn't explained whether that statement is accepting and considering the fibromas. More importantly, even if it were, the board has an obligation to consider the highest appropriate rating and simply recognizing the symptoms under code 5276, which caps out at 50%, doesn't discharge the board's obligation to look at other potentially applicable codes. And with that, Your Honors, if you have no further questions. Thank you. Okay, thank you. Thank you both. The case is taken under submission. And that concludes our arguments.